IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RAYMOND EDWARD KITCHEN,
      Petitioner,

v.                            Case No.  3:10cv237/LC/CJK

KENNETH S. TUCKER,[1]
      Respondent.
_____

ORDER and
<u>REPORT AND RECOMMENDATION</u>

      Before the Court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer (doc. 25), submitting relevant portions of the state court record (docs. 34, 35).  Petitioner replied.  (Doc. 37).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of the issue raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the Court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

_____

      [1]Kenneth S. Tucker succeeded Edwin G. Buss as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d).

BACKGROUND AND PROCEDURAL HISTORY

On May 5, 2005, petitioner was convicted upon jury verdict of Sexual Battery Upon a Person Less Than Twelve Years of Age by a Person Eighteen Years of Age or Older (Count I), Sexual Battery by a Person in Position of Familial or Custodial Authority (Count II), and Lewd or Lascivious Molestation (Count III), for acts petitioner committed upon his stepson and stepdaughter.  (Doc. 34, Ex. B, pp. 155-56, 177-83).  Petitioner was sentenced to consecutive terms of life imprisonment on Count I, thirty years imprisonment on Count II and fifteen years imprisonment on Count III.  (Doc. 34, Ex. B, pp. 177-83).  Petitioner's judgment of conviction and sentence was affirmed on direct appeal on May 11, 2007.  *Kitchen v. State*, 956 So.2d 1186 (Fla. 1st DCA 2007) (Table) (copy at Doc. 34, Ex. J).

On August 20, 2007 petitioner, represented by counsel, filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Doc. 34, Ex. K, pp. 1-24).  Petitioner raised ten grounds for relief.  In an order entered May 22, 2008, the Rule 3.850 court summarily denied relief on some claims (grounds 4, 5, 7, 8 and 9, as well as several sub-claims of ground 10 (subsections 11.j.i) through 11.j.viii), subsection 11.j.ix)b) and subsection 11.j.ix)c)); granted an evidentiary hearing on other claims (grounds 1, 2, 3 and 6, as well as one sub-claim of ground 10 (subsection 11.j.ix)d)); and dismissed with leave to amend the remaining sub-claim of ground 10 (subsection 11.j.ix)a).  (Doc. 35, Ex. K, pp. 238-59).  After petitioner amended the relevant sub-claim of ground 10, (*see* doc. 35, ex. K, pp. 263-285), the Rule 3.850 court ruled that the amended sub-claim would also be considered at the evidentiary hearing.  (Doc. 35, Ex. K, p. 286).  The court conducted an evidentiary hearing on August 10, 2008.  (Doc. 35, Ex. L).  On August 27, 2008, the Rule 3.850

court denied relief on grounds 1, 2, 3, 6 and the pending sub-claims of ground 10 (subsections 11.j.ix)a) and 11.j.ix)d)).  (Doc. 35, Ex. K, pp. 302-317).  The First DCA per curiam affirmed without written opinion on January 28, 2010.  *Kitchen v. State*, 29  So.3d 1121 (Fla. 1st DCA 2010) (Table) (copy at Doc. 35, Ex. Q).  The mandate issued April 1, 2010.  (Doc. 35, Ex. T).

Petitioner filed his federal habeas petition in this Court on June 23, 2010. (Doc. 1).  The petition presents one ground for relief:  "Court appointed interpreter was not qualified to act as such."  (*Id*., p. 6).  Petitioner alleges in support of this claim that the court appointed interpreter made over 400 incorrect translations during petitioner's trial, which "denied petitioner per se a fair trial."  (*Id*.).  Respondent asserts that petitioner is not entitled to relief, because the claim is procedurally defaulted and without merit.  (Doc. 25).

## LEGAL STANDARDS

Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[2] thereby giving the state the "'opportunity to pass upon and correct'

---

[2]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.  A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).  A claim is also considered procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (holding that the independent and adequate state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement."); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *accord Tower v. Phillips*,

---

. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303.  In the second instance, the federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice.  *Tower*, 7 F.3d at 210.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

<u>Section 2254 Standard of Review</u>

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

Under the "contrary to" clause, a federal habeas court may grant the writ

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *Thaler v. Haynes*, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the

result of the state-court decision contradicts them."). If the state court decision <u>is</u> contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate

conclusion, not the reasoning that led to it.   *See Gill v. Mecusker*,  633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)).   The federal court  must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision.   *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).   In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state

court proceeding.").   The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").   Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011).   However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C.

§ 2254(a).  "If this standard is difficult to meet, that is because it was meant to be."
*Richter*, 131 S. Ct. at 786.

PETITIONER'S CLAIM

Petitioner raises one ground for relief:  "Court appointed interpreter was not qualified to act as such."  (Doc. 1, p. 6).  Petitioner alleges the following facts in support of his claim:  "The court appointed interpreter made over 400 incorrect and erroneous tra[n]slations during jury trial and denied petitioner per se a fair trial." (*Id.*).  Petitioner asserts that he raised this claim on direct appeal and in his postconviction proceeding.  (*Id.*).  Respondent, construing petitioner's claim as a federal due process claim, asserts a procedural default defense, arguing that although petitioner challenged the interpreter's alleged mistranslations on direct appeal and in his postconviction proceeding, he did not, although represented by counsel in both proceedings, fairly present the issue as a federal constitutional claim.  Respondent argues further that because petitioner is barred by state procedural rules from returning to state court to present the federal constitutional nature of his claim, the claim is procedurally defaulted.  (Doc. 25, pp. 5-7).  Respondent alternatively argues that petitioner's claim is without merit.  (*Id.*, pp. 7-19).

    A.    Exhaustion and Procedural Default

        i.    <u>Standard for Determining Whether Petitioner Fairly Presented His Federal Due Process Claim to the State Courts</u>

In *Picard v. Connor, supra*, the Supreme Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas

corpus claim must first be presented to the state courts," *id*. at 278, 92 S. Ct. at 513, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

The Supreme Court has also indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In *Anderson v. Harless*, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the district court granted relief to a habeas petitioner on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. *Id*. 459 U.S. at 7, 103 S. Ct. at 278 (*citing Sandstrom v. Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the petitioner had cited federal authority in the Michigan state courts was by referring to a state court decision where the defendant "asserted a broad federal due process right to jury instructions that properly explain state law." *Anderson*, 459 U.S. at 7, 103 S. Ct. at 278 (internal quotation marks omitted). The Court expressed doubt that a petitioner's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. 459 U.S. at 7 and n. 3, 103 S. Ct. at 278 and n. 3.

Years later, the Supreme Court re-addressed the "fair presentation" requirement

in *Duncan v. Henry, supra*. The *Duncan* Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue. The Supreme Court explained,"[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Duncan*, 115 S. Ct. at 888. More recently the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). The *Baldwin* Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.* This language, while not part of the Court's holding, provides an instructive rule of thumb. With regard to this statement, the Eleventh Circuit stated in *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal

judiciary.'"  *McNair* [*v. Campbell*], 315 F. Supp. 2d at 1184 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . .  We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

*Id.*, 416 F.3d at 1302-03 (citations omitted).

The Eleventh Circuit, prior to *Duncan*, broadly interpreted the "fair presentation" requirement; however, the Eleventh Circuit now takes a more restrictive approach.  For example, in *Zeigler v. Crosby*, 345 F.3d 1300 (11th Cir. 2003), the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  *Id.* at 1307.  The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause.  *Id.* at 1308 n. 5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

In *McNair v. Campbell, supra*, the Eleventh Circuit held that a federal habeas petitioner's claim that jurors violated the Sixth Amendment by considering extraneous evidence during deliberations was not fairly presented to the state courts

and thus procedurally barred.  Although the petitioner's direct appeal brief cited to a federal case and his closing paragraph cited several federal constitutional amendments, the petitioner did not argue the Sixth Amendment issue or the applicable federal standard, but only argued that the jurors' conduct violated state law. *Id*. at  1303-04.

This year the Eleventh Circuit in *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342 (11th Cir. 2012), held that a federal habeas petitioner did not "fairly present" his federal constitutional right-to-confrontation claim to the state courts and thus did not exhaust his state law remedies, where the petitioner's direct appeal brief simply objected to the state trial court's admission of certain testimony as allegedly a violation of his "constitutional right of confrontation," without citing the Sixth Amendment or otherwise alerting the state court to the fact that petitioner was making a federal constitutional claim as opposed to one involving the right of confrontation guaranteed by the Florida Constitution.  The court explained:

> [T]o the extent Lucas relies on his state petition's reference to a "constitutional right of confrontation of witnesses," to argue that he raised a federal claim before the state courts, the Supreme Court in *Baldwin* flatly rejected an analogous argument. There, Baldwin had argued that his petition fairly presented a federal ineffective assistance of counsel claim because "ineffective" was a term of art in Oregon that referred only to federal law claims. *Baldwi*n, 541 U.S. at 32, 124 S. Ct. 1347.  The Supreme Court disagreed, reasoning that the petitioner had failed to demonstrate that Oregon state law used "ineffective assistance" to refer only to federal law claims rather than a similar state law claim. *Id*.  Here, Lucas does not even attempt to argue that the phrase "constitutional right of confrontation of witnesses" is peculiar to federal law.  Simply referring to a "constitutional right of confrontation of witnesses" is not a sufficient reference to a federal claim, any more than a reference to "ineffective assistance of . . . counsel" was sufficient in

*Baldwin*, 541 U.S. at 32-33, 124 S. Ct. 1347.  Moreover, none of the cases cited in Lucas's state briefs discussed the right to confront witnesses, under either the state or federal constitutions, and Lucas's briefs also failed to cite to any constitutional provision.  Thus, Lucas cannot be said to have fairly apprised the state court of his federal constitutional right-to-confrontation claim.

*Id.* at 1352-53.

ii.    <u>Petitioner's direct appeal</u>

Petitioner was represented by counsel on direct appeal.  Petitioner's amended initial brief presented the following claim as Issue 1:  "The Trial Court Erred In Failing to Provide Adequate Interpretation Of The Khmer Language In That Rath Som [the court-appointed interpreter] Did Not Interpret According To The Requirements Of Law.  Thus, Appellant Was Denied His Fundamental Right To Confront And Cross Examine Witnesses."  (Doc. 34, Ex. F, pp. i, 9).  In support of this claim, appellate counsel argued that the court interpreter failed to meet state law standards for court interpretation and that the interpreter's alleged mistranslations rendered petitioner's trial "fundamentally unfair" (doc, 34, Ex. F, p. 7), and denied petitioner "the right to confront the witnesses against him" (*id*., p. 8), "[petitioner's] right to effectively cross-examine the witnesses" (*id*.), and "[petitioner's] fundamental, constitutional right to cross-examine the witnesses against him" (*id*., p. 9).  Counsel referenced petitioner's claim as "constitutional", but never identified the legal basis of petitioner's claim as involving the Sixth Amendment, the Fourteenth Amendment, or the United States Constitution.  Appellate counsel argued that the applicable standard was "whether or not [petitioner] received a fundamentally fair trial" (*id*., p. 17), without citation to any federal constitutional provision or case law.  Petitioner's legal argument in support of this claim cited to state law cases, with the

exception of *United States v. Cruz*, 765 F.2d 1020, 1023 (11th Cir. 1985), which petitioner cited for "the federal procedure for disputes over translations" (ex. F, p. 12)[4]; *United States v. Joshi*, 891 F.2d 1303, 1309-1310 (11th Cir. 1989), which petitioner cited for the proposition that word-for-word translation is the standard, but minor deviations from that standard will not necessarily contravene a defendant's constitutional rights (ex. F, p. 24); and *Perez-Lastor v. INS*, 208 F.3d 773 (9th Cir. 2000), which petitioner cited for the propositions that:  (1) "[i]t is the cumulative effect of seemingly evasive and insufficiently precise answer that destroys any semblance of a fair trial," (ex. F, pp. 34-35) and (2) the standard for determining whether the incompetent translation prejudiced the outcome of the case is "whether or not a better translation would potentially make a difference in the outcome of the case." (*Id*., p. 35 (*citing Perez-Lastor* at 780 and n. 8)).  The state law cases petitioner discussed (cases from Florida and other states) all dealt with inadequate interpretation, but applied different standards:  one court applied a harmless-error analysis, another applied an abuse of discretion standard, and another applied the prejudice standard articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), because the claim arose in the context of an ineffective assistance of counsel claim.  Petitioner conceded that the facts supporting his claim were never heard or evaluated by the trial court, (doc. 35, ex. F, p. 11), but argued that his claim should nonetheless be reviewed on direct appeal as opposed to

---

[4]Appellate counsel stated that he had encouraged the state trial court and the prosecution to utilize the *Cruz* procedure for resolving the dispute over the translations, suggesting that the trial court try to produce a stipulated transcript through collaboration among the parties and, if that was not possible, to require each side to produce its own version of the transcript and put on evidence supporting the accuracy of that version and challenging the accuracy of the other side's version. (Doc. 34, Ex. F, pp. 12-13).

collateral review, because the error was fundamental and because the only way the claim could be raised on collateral review was through a challenge to defense counsel's effectiveness which would improperly shift responsibility for competent translation from the trial judge to defense counsel and would improperly place the burden of proof on petitioner to show prejudice (*id*., pp. 15-16). Appellate counsel argued that it would be "unconstitutional" to require petitioner to raise the issue in a collateral attack instead of direct appeal. (*Id*., p. 16).

The State on direct appeal asserted a procedural defense, arguing that the translation issue: (1) was not preserved below, and (2) was not properly brought in an appellate forum, because petitioner's claim relied on additional evidence that was not part of the trial record (an alternate transcription of the trial proceedings provided by Matthew Madden, an interpreter petitioner retained after trial) and required the appellate court to determine factual issues. (Doc. 34, Ex. G, pp. 5-6, 9-17). The State argued that the appellate court should reject petitioner's claim without prejudice to petitioner seeking proper relief in a postconviction proceeding under Fla. R. Crim. P. 3.850. The State did not address the merits of petitioner's claim.

The First DCA heard oral argument and on May 11, 2007, and per curiam affirmed petitioner's convictions and sentences without written opinion. (Doc. 34, Exs. I, J; *see also Kitchen v. State*, 956 So.2d 1186 (Fla. 1st DCA 2007) (Table)).

With the principles underlying the "fair presentation" requirement in mind, the undersigned concludes that petitioner did not apprise the state appellate court that the legal argument in support of his claim relied upon the due process and confrontation clauses of the United States Constitution. Although petitioner sprinkled his argument with assertions that the interpreter's inadequacy deprived him of a fair trial, the right

to confront witnesses and his constitutional rights, petitioner's argument was not sufficient to reference a federal claim as opposed to one arising under the Florida Constitution. *See Lucas*, 682 F.3d at 1352-53 (holding that petitioner's argument on direct appeal that he was deprived "of his constitutional right of confrontation of witnesses against him" was not a sufficient reference to a federal claim); *see also McNair*, 416 F.3d at 1303 (holding that petitioner's references to federal law in his state habeas proceedings were "exactly the type of needles in the haystack that we have previously held are insufficient to satisfy the exhaustion requirement").

### iii. Petitioner's postconviction proceeding

Petitioner again raised the issue of the court interpreter in his counseled Rule 3.850 motion. Petitioner claimed in Ground 1 that newly discovered evidence established that Rath Som, the court-appointed interpreter, did not correctly interpret or translate the testimony of Khmer-speaking witnesses, including one of the victims. (Doc. 34, Ex. K, pp. 2-3). Petitioner argued that the newly discovered evidence was not, and could not have been known at the time of trial, and that the new evidence "w[ould] probably produce an acquittal on retrial." (*Id*., p. 3). The State conceded, and the Rule 3.850 court agreed, that petitioner was entitled to an evidentiary hearing on this claim. (Doc. 35, Ex. K, p. 238).

Petitioner claimed in Ground 7 of his Rule 3.850 motion that the "inadequate" court interpreter rendered his conviction "unconstitutional." (Doc. 34, Ex. K, p. 14). Petitioner's counsel argued:

> The Court failed in its primary duty to provide an adequate court interpreter. Thus, Defendant's convictions were unconstitutionally imposed for a number of reasons including the fact that Defense Counsel could not object to testimony that no one knew (perhaps not even Rath Som) the witnesses were giving. There can be no effective cross-

examination when the witnesses being cross-examined are asked questions by the court interpreter that the Defense Counsel did not ask or when the court interpreter misinterprets the answers given to the questions he misinterpreted to begin with.

(Doc. 34, Ex. K, pp. 14-15). The State argued, and the Rule 3.850 court agreed, that petitioner was procedurally barred from raising this claim on collateral review, because "the appellate court reviewed this issue on direct appeal." (Doc. 35, Ex. K, pp. 73, 239). The Rule 3.850 court ruled that "[t]o the extent that defendant is attempting to expand his argument beyond the issue raised on appeal, this Court finds Defendant's complaints about the trial court's selection of the court interpreter are matters that should have been addressed on appeal; therefore, he is not entitled to make those claims in this proceeding. (*Id.*, pp. 239-240).

After the evidentiary hearing, the Rule 3.850 court made extensive findings of fact and denied relief on Ground 1 as follows:

> Kitchen raises as ground one newly discovered evidence. He claims that Som, the court-appointed interpreter, did not correctly interpret or translate most of the Khmer testimony. Although the appellate court previously denied Kitchen relief on appeal when he challenged the trial court's appointment of the interpreter, Kitchen argues in this proceeding that a transcript of the trial that was produced with the assistance of another interpreter, Matthew Madden ("Madden") reveals a substantial amount of new material evidence. Madden testified at the evidentiary hearing, and the Court finds that his testimony is credible, yet not sufficient to warrant relief in this proceeding. Madden translated portions of the voice-recordings of the trial and compared them to the transcript produced based on Som's translations. While the interpretations differ, the court finds that Madden's interpretation is not new evidence which would probably produce an acquittal on retrial.

> The Supreme Court of the State of Florida recently explained the analysis that a trial court must employ when faced with a claim of newly

discovered evidence in a postconviction proceeding.

> First, the evidence must not have been known by the trial
> court, the party, or counsel at the time of trial, and it must
> appear that the defendant or defense counsel could not
> have known of it by the use of diligence.  Second, the
> newly discovered evidence must be of such nature that it
> would probably produce an acquittal on retrial.  *See Jones*,
> 709 So. 2d at 521.  Newly discovered evidence satisfies the
> second prong of the *Jones* test if it "weakens the case
> against [the defendant] so as to give rise to a reasonable
> doubt as to his culpability."  *Jones*, 709 So. 2d at 526
> (quoting *Jones v. State*, 678 So. 2d 809, 315 (Fla. 1996)).
> If the defendant is seeking to vacate a sentence, the second
> prong requires that the newly discovered evidence would
> probably yield a less severe sentence.  *See Jones v. State*,
> 591 So. 2d 911, 915 (Fla. 1991).
>
> In determining whether the evidence compels a new trial,
> the trial court must "consider all newly discovered
> evidence which would be admissible" and must "evaluate
> the weight of both the newly discovered evidence and the
> evidence which was introduced at the trial."  *Id.* at 916.
> This determination includes whether the evidence goes to
> the merits of the case or whether it constitutes
> impeachment evidence.  The trial court should also
> determine whether the evidence is cumulative to other
> evidence in the case.  The trial court should further
> consider the materiality and relevance of the evidence and
> any inconsistencies in the newly discovered evidence.

*Preston v. State*, 970 So. 2d 789, 797-801 (Fla. 2007).  This Court has
conducted the cumulative analysis required by law and finds that
Kitchen is not entitled to relief based on his claim of newly discovered
evidence.

With regard to count 1, Madden's interpretation has no effect. B.S. testified in English. As stated earlier, B.S. vividly explained how Kitchen sexually abused him. None of Madden's translation addresses the merits of B.S.'s allegations of abuse or calls into question the reliability of B.S.'s testimony. Likewise, the translation has little effect with regard to count 3. Count 3 of the information charged Kitchen with lewd or lascivious molestation of M.S. by touching her "breasts, genitals, genital area, or buttocks, or the clothing covering them." (Exhibit B). At trial, M.S. testified, according to Som, that Kitchen touched "[her] chest, [her] butt, and [her] vagina (Indicating)." (Exhibit C, Transcript, p. 61). Madden's translation, that is, "he touched [my] breasts, touched [my] butt, touched that place [unintel]," only strengthens M.S.'s testimony. (Madden's Translation of testimony of M.S., p. 10 of 60). The likelihood that Kitchen would be acquitted of the crime charged in count 3, actually is *decreased* by consideration of Madden's translation.

Madden's translation is relevant with regard to count 2, that is, Kitchen committed sexual battery of M.S. while in a position of familial or custodial authority by placing his mouth on her vagina. Madden testified that M.S. never testified that Kitchen touched her vagina. According to him, although Som translated M.S.'s testimony as referring to her *vagina*, the word she actually said was *anus*. Because the charging document specifically refers to Kitchen's oral contact with M.S.'s vagina, the court has conducted a thorough review of the entire trial transcript that was transcribed by the court reporter based on Som's translation, the entire transcript provided by Madden, and the additional evidence presented at the evidentiary hearing. In accordance with *Preston v. State*, 970 So. 2d 797-801 (Fla. 2007), the Court has evaluated the weight of both the newly discovered evidence and the evidence which was introduced at the trial.

Even if Kitchen were afforded a retrial with regard to count 2, the evidence against him would not consist solely of Madden's translation of M.S.'s testimony which indicates that M.S. referred only to her anus and not her vagina. Som's previous interpretation indicated that M.S.

explained how Kitchen touched her vagina with his mouth.  On redirect examination of M.S. at trial, the State was allowed to question her about her deposition testimony, which she provided to another interpreter in February 2005.  In that deposition, as interpreted by Chhay Hour and as pointed out during trial, M.S. specifically referred to Kitchen touching her "vagina."  *See* Exhibit D which is the portion of the trial transcript in which M.S. discusses her deposition testimony.  Although the report of M.S.'s interview with the Georgia Center for Children was not admissible at trial, at the evidentiary hearing the document was admitted.  It reveals that a fourth interpreter, William Lam, interpreted M.S.'s report of Kitchen putting his mouth on her "pussy."  While Madden's translation does go to the merits of the allegation, its primary force is to create a battle of the interpreters.  At this point, the Court has no method of determining which interpretation is correct.  And even assuming Madden's interpretation of M.S.'s testimony were more accurate than Som's interpretation, the Court could not reasonably conclude that Madden's translation would probably produce an acquittal on retrial.  To reach that result the Court would be required to ignore the interpretations of the two other interpreters used in this case.  Furthermore, the Court would be required to ignore the Williams Rule testimony presented by K.S. and the fact that the transcript repeatedly shows that M.S. was indicating by motions throughout the trial where Kitchen had touched her.   The Court has considered the newly discovered evidence and finds that it is not of such a nature that it would probably produce an acquittal on retrial.

(Doc. 35, Ex. K, pp. 304-08) (footnote omitted).

Petitioner appealed *pro se*, raising as "Issue Two" the Rule 3.850 court's denial of relief on his newly discovered evidence claim (Ground 1 of the postconviction motion).  (Doc. 35, Ex. N, pp. 14-20).  Petitioner identified the issue raised in "Issue Two" as:  "The Appellant Was Denied A Fair Trial In That Court Appointed Interpreter Incorrectly Translated Witness Testimony Presented To The Jury Prejudicing The Outcome Of The Jury Verdict."  (Doc. 35, Ex. N, p. ii and p. 14).

Petitioner argued that his newly discovered evidence of the interpreter's mistranslations established that he was "convicted and sentenced on evidence that is false, misleading and/or questionable at best," (doc. 35, Ex. N, pp. 16-17), and that the inadequacy of the interpretation made his trial fundamentally unfair.  (*Id*., p. 19). Petitioner cited to federal cases, *Valladares v. United States*, 871 F.2d 1564 (11th Cir. 1989); *United States v. Lim*, 794 F.2d 469, 470 (9th Cir. 1986); and *United States v. Joshi*, 896 F.2d 1303 (11th Cir. 1990), which discussed a federal court's duty to provide an interpreter under the Court Interpreters Act, 18 U.S.C. 1827, and also discussed the constitutional implications of adequate interpretation, framing the inquiry as "whether any inadequacy in the interpretation made the trial fundamentally unfair."   Petitioner also appealed the summary denial of relief on Ground 7 of his postconviction motion.  (Doc. 35, Ex. N, pp. 9-10).  Specifically, petitioner raised as "Issue One" the following:   "The Lower Court Abused It's [sic] Discretion In Denying Appellant's Claims Without Holding An Evidentiary Hearing And/Or Misapplying Case Law Violated Appellant's Constitutional Guarantees Of Due Process And A Fair Trial With Effective Assistance Of Counsel."  (Doc. 35, Ex. N, p. 6).  Petitioner cited to a single case, a state law case, in support of his argument that the interpreter's erroneous translation amounted to fraud on the court and warranted vacation of the judgment of conviction.  (*Id*., p. 9 (*citing State v. Burton*, 314 So.2d 136, 138 (Fla. 1975) (holding that any judgment or order procured from any court by the practice of fraud or deception may be set aside at any time))).  The First DCA per curiam affirmed without written opinion on January 28, 2010.  *Kitchen v. State*, 29 So.3d 1121 (Fla. 1st DCA 2010) (Table) (copy at Doc. 35, Ex. Q).

Respondent asserts that neither petitioner's direct appeal brief nor his

postconviction appeal brief fairly presented a federal due process claim arising under the Fourteenth Amendment of the United States Constitution.  (Doc. 25, p. 5). Respondent acknowledges that petitioner's Rule 3.850 motion asserts a constitutional violation, but argues that the Rule 3.850 motion "does not assert what the constitutional violation was and certainly does not mention any federal constitutional violation.  Merely claiming a constitutional violation does not fairly present to the state court a federal question because Florida's State Constitution has its own due process clause, and it has its own constitutional trial rights provisions. . . . Petitioner's claims neither identified the particular legal basis nor identified the claim as federal."  (Doc. 25, pp. 5-6).

Petitioner argues in his reply that he fairly presented his federal due process claim to the state postconviction court, because his Rule 3.850 motion made the opening statement that petitioner's judgment was imposed in violation of the Constitution or laws of the United States and of the State of Florida, and because one or more of petitioner's individual grounds for relief referenced the denial of petitioner's right to confront and cross-examine witnesses. (Doc. 37).  The individual references petitioner cites, however, were all made in petitioner's presentation of his ineffective assistance of counsel claims (Grounds 6 and 10).  Petitioner further argues that he presented his federal due process claim in his postconviction appeal by asserting in his Summary of the Argument that the court interpreter's alleged mistranslations constituted fundamental error and "reache[d] to the very foundation of due process and a fair trial as guaranteed by the United States Constitution."  (Doc. 37, p. 6 (quoting Doc. 35, Ex. N, p. 4)).  Petitioner also cites to other portions of his postconviction appellate brief which refer to petitioner's constitutional rights, but

those references were not made in petitioner's argument concerning the Rule 3.850 court's denial of relief on Ground 1 (the newly discovered evidence of the interpreter's alleged mistranslations). Petitioner's conclusion in his postconviction appellate brief asserted that the Rule 3.850 trial court's denial of postconviction relief "denied Appellant effective assistance of counsel, due process and a fair trial". (Doc. 35, Ex. N, p. 25).

Again, neither petitioner's Ground 1, nor Ground 7 of his counseled postconviction motion put the state court on notice that petitioner was raising federal constitutional claims. The same is true of petitioner's appellate brief. Petitioner's failure to frame his claim as one involving the United States Constitution is especially pronounced in that petitioner did specifically raise federal constitutional objections before the state court based on different claims (for example, petitioner's ineffective assistance of counsel claims).

Petitioner's failure to raise a federal argument in his direct appeal or in his Rule 3.850 proceeding in the Florida courts bars him from raising the argument in a successive state postconviction proceeding. *See Turner v. Crosby*, 339 f.3d 1247, 1281 (11th Cir. 2003). Petitioner's claim is procedurally defaulted for purposes of federal habeas review. Petitioner has made none of the requisite showings to excuse his default. Petitioner's procedural default bars federal habeas review.

B.     Merits

Even if the Court gave petitioner the benefit of all doubt and concluded that he properly exhausted his federal due process claim in the state courts and that the state courts adjudicated the claim on the merits, petitioner is not entitled to federal habeas relief. The Supreme Court has not published an opinion addressing an assertion of

a due process violation arising from a trial court's selection of a court interpreter (i.e., a trial court's appointment of an unqualified interpreter), or a court-appointed interpreter's translation of witnesses' examination during a criminal trial.  Given the lack of Supreme Court precedent that "squarely address[es]" the constitutional implications of a court-appointed interpreter's translation during trial proceedings under the circumstances presented in this case, petitioner's claim fails to make the required showing that the state courts either acted contrary to "clearly established" federal law or unreasonably applied "clearly established" federal law.  *See Wright v. Van Patten*, 552 U.S. 120, 126, 128 S. Ct. 743, 747, 169 L. Ed. 2d 583 (2008) ("Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonably applied clearly established federal law.") (internal quotation marks omitted); *Schriro v. Landrigan*, 550 U.S. 465, 478, 127 S. Ct. 1933, 1942, 167 L. Ed. 2d 836 (2007) (The Arizona Supreme Court did not unreasonably apply federal law because "we have never addressed a situation like this."); *Carey v. Musladin*, 549 U.S. 70, 77, 127 S. Ct. 649, 654, 166 L. Ed. 2d 482 (2006) ("Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here," the denial of relief by the California Court of Appeal "was not contrary to or an unreasonable application of clearly established federal law."); *Blanco v. Sec'y, Fla. Dep't of Corr.*, — F.3d —, 2012 WL 3081313, at *14 (11th Cir. July 31, 2012) ("There is nothing in United States Supreme Court precedent that would support a claim such as the one Blanco raises before us.  As a result, the trial court did not act contrary to clearly established Federal law, and its decision was not based on an unreasonable determination of the facts in light of the evidence

presented."); *Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1287-88 (11th Cir. 2012) ("[T]he Supreme Court has never held that a prosecutor's closing arguments were so unfair as to violate the right of a defendant to due process. [Petitioner] is not entitled to habeas relief because 'it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court].'") (*quoting Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009)); *see also Jaworski v. Sec'y, Fla. Dep't of Corr.*, 464 F. App'x 806, 809 (11th Cir. 2012) (denying habeas relief on petitioner's claim that his constitutional rights were violated when the trial judge absented himself during jury deliberations: "Given the lack of binding precedent that 'squarely address[es]' the constitutional implications of a trial judge's absence under the circumstances presented in this case, Jaworski's claim on Ground 1 failed to make the required showing that the state court acted contrary to 'clearly established' federal law.").

Petitioner has pointed to no Supreme Court precedent, in his state court pleadings or here, holding that a court-appointed interpreter's translation of witnesses' examination under the circumstances presented here violates a defendant's federal constitutional rights to due process and confrontation. The undersigned has not found any such precedent. Petitioner has not shown that the state courts' rejection of his claim was contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the record before the state court.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States

District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Kenneth S. Tucker has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Raymond Edward Kitchen* in the Circuit Court for Santa Rosa County, Florida, Case No. 04-651 be DENIED,

and that the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 20th day of September, 2012.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).